## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal Case No. 23-cr-122 (APM)** |
| **v.** | : | |
| | : | |
| **STEVEN PRICE**, *et al.*, | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO MOTION FOR RETURN OF PROPERTY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the Motion for Return of Property filed by defendant Steven Price because defendant has failed to meet his burden of: (1) demonstrating that he has not been provided the materials contained on the server in discovery; (2) that defendants would stipulate to the authenticity and admission of the server and its contents at trial; (3) that there are no other means by which defendant can access the hard drivers provided to the them in discovery; and (4) there are no other alternative means to obtain the materials. In support of its opposition, the government respectfully submits as follows:

### RELEVANT FACTUAL BACKGROUND

Defendant Price owned and operated a dental practice in the District of Columbia advertised as The Smile Center, PLLC, aka: The Smile Center of Washington ("Smile Center"). ECF No. 1, ¶ 1. Defendant Moore was employed by defendant Price as a dental hygienist. *Id*., ¶ 4.

The vast majority of the Smile Center's patients were insured through District of Columbia Medicaid program ("D.C. Medicaid" and "Medicaid") which was jointly funded by the federal and District of Columbia governments. *Id*., ¶¶ 4-5. On March 2, 2010, defendant

Case 1:23-cr-00122-APM     Document 34     Filed 05/28/24     Page 2 of 11

Price was approved by D.C. Medicaid to provide dental services to District of Columbia Medicaid recipients. *Id.*, ¶ 3. As a D.C. Medicaid-certified dentist, defendant Price was authorized to provide dental health services to D.C. Medicaid beneficiaries and to submit claims to D.C. Medicaid for the services rendered. *Id.*, ¶¶ 3, 7.  Between January 1, 2017, and March 22, 2022, based upon the Smile Center's submitted claims, the Smile Center received more than $10.5 million from D.C. Medicaid. *Id.*, ¶ 1. The Indictment alleges that defendants falsified patient medical records and based upon those records, false claims were submitted to Medicaid for services not rendered totaling more than $4 million.  *Id.*, ¶¶ 28 (c), 30.

As set forth in his Medicaid provider agreement, defendant Price was required to maintain the Smile Center's medical, financial, and administrative records concerning services provided to Medicaid beneficiaries for a minimum of ten years (unless otherwise specified).  *Id.*, ¶ 23. To receive payments from D.C. Medicaid, the Smile Center submitted claims electronically to the Department of Health Care Finance ("DHCF") through its fiscal agent, Conduent, which then processed the claims. The Smile Center's individual patient medical records were electronic, being entered into and processed through an electronic records keeping software program called "Open Dental." *Id.*, ¶ 28(a).

Using computers stationed in various treatment rooms and the front desk area, defendants Price and Moore, and other Smile Center employees accessed Open Dental and entered information into patient charts to make, record, and maintain, amongst other things, patients' progress notes, histories, records, charts, orders, x-rays, and photographs (hereinafter referred to as "patients' records"), with each patient identified through a unique patient number.[1] *Id.*, ¶

---

[1] Each Smile Center employee had a unique username and password to access patient medical records in Open Dental. The Open Dental software program included audit trail features that captured *inter alia*, the username, computer, and information about data entries. It is the

2

28(b).   The Smile Center's office manager then electronically submitted claims to D.C.
Medicaid based upon the dental services reflected in patients' medical records in Open Dental.
*Id*., ¶¶ 28 (c)-(h).

### The Smile Center's Seized Server

The Smile Center's patient medical records were maintained electronically on a server
located at the Smile Center's practice.[2]  On March 31, 2022, the Federal Bureau of Investigation
("FBI") executed a search warrant at the Smile Center issued by Magistrate Judge Zia Faruqui of
the District Court for the District of Columbia. Amongst other things, the FBI seized the Smile
Center's server (Dell PowerEdge T630 server), which housed a virtual machine with shared disc
drives for the Smile Center that contained various business and patient files, as well electronic
health records and imaging software program, in particular the Open Dental electronic health
records program.[3]

The FBI's CART team imaged the Smile Center's server and reproduced it on hard drives
for defendants in discovery.[4] Specifically, on April 20, 2023, the government provided
defendants with an initial discovery production and notified counsel that they should provide
hard drives to the FBI so that copies of the server and the iPhone could be imaged onto them. *See*

---

government's understanding that defendant Price was also able to remote access into the front
desk computers and Open Dental.

[2]  During a reverse proffer on April 30, 2024, government counsel learned that the
practice had a back-up server located elsewhere and the defendants had access to a back-up
server which they had been using to review the Smile Center's patient medical records.

[3]  Government counsel was originally under the misimpression that the FBI had only
imaged the server, but was later informed that the FBI took the actual server, which is still in its
custody and control.

[4]  Other seized electronic devices, including defendant Price's cell phone, were imaged
and provided to defendants in discovery on another hard drive.

Exhibit No. A ("As we discussed yesterday, during the execution of the search warrant of the dental practice, the FBI seized a number of electronic devices including the practice's server.[1] If your client would like a copy of these materials, please provide the FBI with two hard drives (one with storage of at least 5 terabytes, the other, at least 3 terabytes), so that the FBI can download the materials for your review."). On May 10, 2023, while in Court for a status hearing, an FBI agent provided defendant Moore's counsel with two hard drives, one containing the imaged server and the other containing images of the other electronic devices. On June 29, 2023, as part of Discovery Production No. 3, the government wrote counsel, "It is my understanding that the FBI has already provided Mr. Pierce with the imaged materials from the practice's computers. At least, one of the hard drives that Mr. Ahmed provided to the FBI, however, was corrupted and did not allow the FBI to download the materials. Mr. Ahmed, if you have not done so already, please contact Special Agent Derek Candela at [redacted], to provide an additional hard drive." *See* Exhibit No. B. On August 8, 2023, the government provided defendant Price's counsel a new copy of the hard drives. *See* Exhibit No. C.

On September 29, 2023, defendant Moore's counsel indicated that he was having trouble accessing the hard drives. *See* Exhibit No. D. The government responded and asked counsel to reach out to the lead FBI agent, Special Agent Agee. *Id*. On October 2, 2023, FBI Special Agee advised defense counsel that, "Viewing the contents will require you to acquire a virtual machine viewing software program. The most common software program is VMWare. In our case, we are using VMWare Workstation Pro 17 for Linux and Windows." *Id*.

On or about December 28, 2023, defendant Price obtained Heather Shaner, Esquire, as his new counsel. On or about February 14, 2024, two hard drives containing the electronic materials from the search warrant were provided to Ms. Shaner's investigator, Mr. Crossley. *See* Exhibit No. G. On March 8, 2024, defendant Moore's counsel informed government that, "[w]e

have never been able to access data on the external hard drives to which your FBI team transferred discovery, despite the instructions from the FBI. Ms. Shaner asked me to see what we can access from the drives onto which the FBI transferred discovery to her. With the government's production to Ms. Shaner it appears we can access data, but we can still not access it on the Open Dental platform."[5] *See* Exhibit No. F. On March 12, 2024, government counsel responded, "I am sorry to hear you are having trouble with the hard drives and the data. I can put SA Agee in touch with the IT tech from your firm to try to determine the problem. Please let me know whom SA Agee should contact." *Id.*  Defense counsel did not provide the government with contact information for their IT consultant. *See* Exhibit No. G. Instead, government counsel and SA Agee spoke with Defendant Moore's counsel and asked whether "the computer being used [was] powerful enough to run the VM program" and whether "the virtualization was enabled." *See* Exhibit No. H. Government counsel again suggested that defendant Moore's IT consultant talk directly to SA Agee. *Id.*  In addition, because defendant Moore's counsel alleged that not all of the Open Dental data was contained on the hard drive, government counsel requested defendant Moore's counsel return the hard drives so that that they could be checked by the FBI.[6] *Id*.

On April 12, 2024, Moore's counsel said that their off-site IT consultants claimed that they needed a $40,000 program to run Open Dental. *See* Exhibit No. I. On April 15, 2024, after consulting with the FBI, government counsel provided defendants' counsel with additional

---

[5] Defendant Moore's counsel made statements to government counsel regarding the Open Dental program and the Smile Center's records, which led government counsel to believe that defendants had accessed the discovery hard drives.

[6] To date, defendant Moore's counsel has not returned the hard drives to the government to check whether there is any missing data as alluded to by defense counsel.

guidance about accessing the previously provided hard drives. *Id.* On May 13, 2024, a status hearing was held in which defendant Price's counsel stated that his IT consultant contended that a computer with 32 GB of RAM and 5TB of storage would cost in the range of $19,000. As a result, on May 16, 2024, government counsel informed defense counsel that the stand-alone computer agents were using to access view and access the Smile Center's Open Dental records cost approximately $3,520. *See* Exhibit No. J. Thereafter, on May 16, 2024, defendant Price inquired of the Federal Public Defender's Office whether it could obtain a similar computer. *See* Exhibit No. K.

## **RELEVANT PROCEDURAL BACKGROUND**

On April 13, 2023, a grand jury in the District Court for the District of Columbia returned an indictment charging Steven Price and Keidi Moore with one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, one count of health care fraud, in violation of 18 U.S.C. § 1347, ten counts of false statements relating to a health care matter, of 18 U.S.C. §§ 1035(a)(2) and 2; nine counts of wire fraud, of 18 U.S.C. §§ 1343, 2. On April 19, 2023, defendants turned themselves into law enforcement and had their initial appearance. Defendant Price was arraigned on the indictment, but defendant Moore requested to be arraigned at the next hearing. On May 10, 2023, defendant Moore was arraigned. Since the defendants' arraignment, there have been a number of status conferences, and the government has provided defendants with six discovery productions, including the two hard drives and grand jury materials. On May 2, 2024, the government provided defendants with a reverse proffer regarding some of the evidence it anticipates it will offer at trial.

On May 13, 2024, during the last status conference, the Court ordered the "[p]arties were advised to resolve technical access to discovery provided by the Government." *See* May 13, 2024

Minute Order.

## DISCUSSION AND ANALYSIS

Defendant Price's motion for return of property pursuant to Federal Rules of Criminal Procedure 12, incorrectly argues that the Court should order the government to return the lawfully seized server because, according to defendant Price, "[r]eturn of the Server and related software is the **easiest and best solution** to the current discovery barrier."[7] ECF No. 31, ¶ 16 (emphasis added); *see also id.*, ¶ 10. Defendant Price provides no factual or legal authority to support his motion and it should be summarily denied.

Defendant has a copy of the server seized by the FBI. The government twice provided defendant Price copies of imaged electronic evidence seized during the execution of search warrant at the Smile Center, including the server containing the Open Dental records – initially on August 7, 2023, and again to new counsel on February 14, 2024.[8] Defendant has just not taken the necessary steps to access the data. To date, it is the government's understanding that defendant has neither bought nor borrowed a computer with sufficient capacity to view the data on the hard drives.[9] Indeed, it was not until May 16, 2024, that defendant Price even sent an email to the Federal Public Defender asking for authorization to purchase a $3,520 computer to

---

[7] Defendant does not move for the return of property pursuant to Fed.R.Crim.P. 41(g).

[8] On January 11, 2024, even before providing the hard drives containing the electronic evidence a second time, Special Agent Agee communicated with defendant Price's investigator regarding the capacity for the hard drives and the need to purchase viewing software, such as VMWare to access the Open Dental records on the hard drive. *See* Exhibit No. E.

[9] The amount of data in this case is not particularly unusual for a health care fraud matter or cyber matter. As a result, if defendants are unable to obtain authority to purchase a computer (or one and share it), perhaps the Federal Public Defender has a computer that has the capacity needed.

view the hard drives.[10] *See* Exhibit No. K.

The government has consistently offered to have defendants' IT consultants discuss any issues with accessing the hard drives with the lead FBI agent. When the drives were first produced to defendant Price's investigator, there was a discussion with SA Agee regarding the need for a viewing platform and a larger capacity computer.[11] *See* Exhibit No. E.  However, there were no further discussions with defendant Price's investigator nor his IT consultant regarding any issues. Indeed, it is not clear whether defendant Price has obtained his own IT consultant (who apparently suggested the need for a $19,000 computer) or whether defendant Price is also using defendant Moore's IT consultant(s), who previously suggested defendant Moore needed to purchase a $40,000 program to view the materials. Assuming defendant Price is relying upon defendant Moore's consultant(s) as suggested by his motion, the government's offer to have defendant Moore's IT consultants speak directly to the agent to resolve the issue with the hard drives, have been rebuffed.[12]  *See* Exhibit No. G.  In any event, after learning of defendants' IT consultants' seemingly inflated allegations of the costs involved, government counsel inquired of the FBI, and provided defendants with information about what the FBI used to access the imaged data contained on the hard drives. *See* Exhibit Nos. I, J.

Defendant inaccurately claims that he has no access to the Smile Center's medical records data, stating, "[w]e cannot review the evidence nor proceed to prepare for Trial nor participate in a Trial without access to the data." *See* ECF No. 31, ¶ 5. As the government recently learned, defendants have had access all along to the Smile Center's back-up server,

---

[10]  As defendant Moore's counsel noted at the status hearing, it is government counsel's understanding that the viewing software would probably cost in the $100 range.

[12]  *See* ECF No. 31, ¶¶ 7-9.

which, according to defense counsel, contains the data from the Smile Center's Open Dental records.[13]  In respondence to a query by the Court at the last status hearing, defendant Price's counsel confirmed that defendant Price has maintained his license to use the Open Dental software. Defendant Price's motion fails to mention what steps, if any, he has taken to determine whether he can access the Smile Center's records and the data contained on the back-up server using his Open Dental license.[14]

Defendant Price's motion does not assert that the seized server was the result of an illegal seizure and one in which he seeks relief under Federal Rule of Criminal Procedure 41(g). His motion does, however, suggest that he would not stipulate to the authenticity of records produced from the server and search of the data and is looking for a possible discovery violation to exclude the evidence because, "the IT experts have indicated that they necessarily need access to the server to ensure that whatever has been produced in discovery is accurate and complete" and that "any expert in Open Dental who we engaged for trial would need to access the Original Server to be sure the FBI properly imaged to compare the external hard drives provided to counsel." *See* ECF No 31, ¶ 9, 13. Given defendant Price's statements that he anticipates attacking the authenticity and admissibility of the Open Dental records and data and is in search of a discovery violation, the government will not provide defendants with the original seized electronic devices, including the server. Courts have recognized the right of the government to retain the original version of digital evidence where authentication may be an issue.  *See, e.g., United States v.*

---

[13] This may explain why defendant Moore's counsel was making claims to government counsel regarding the Open Dental data and why government counsel did not learn that defendants had not actually accessed the hard drives until March 2024.

[14]  Because the government does not know the date of the records that defendants have been using from the back-up server, to the extent the parties anticipate using information from the Smile Center's Open Dental records, the parties should all be working from the same image of the server.

*Ganias*, 824 F.3d 199, 215 (2d Cir. 2016) ("Preservation of the original medium or a complete mirror may therefore be necessary in order to safeguard the integrity of evidence that has been lawfully obtained or to authenticate it at trial."); *Matter of the Search of Twenty-Six (26) Digital Devices and Mobile Device Extractions That Are Currently in the Possession of Law Enforcement In Washington D.C.*, 2022 WL 998896, at * (D.D.C. Mar. 14, 2022) ("Indeed, the majority of circuits to consider the issue have held that evaluating the legitimacy of law enforcement's interests in retaining lawfully seized property and weighing them against an individual's competing interest in regaining his property is not, and never has been, a concern of the Fourth Amendment, even when the underlying investigation or prosecution has been completed.") (citation and internal quotation marks omitted).

The government provided defendants with images of the server and other electronic evidence on the hard drives. Defendant clearly have yet to take the steps necessary to access those materials, nor have they shown why the forenssic copies of the servers that they have been given are inadequate to allow them to prepare their defense, in light of the government's interest in preserving the integrity of the original.  Accordingly, the Court should use its broad discretion regarding discovery to deny defendant Price's motion for return of the server.

As a last resort, government counsel suggests that it could use procedures similar to those used when defense counsel review classified information – the FBI could set up a stand-alone computer in an office at the FBI's Washington Field Office (WFO), and defendants' counsel could schedule time to access and review the data from the Smile Center's imaged server. Using this method would require the government to divert considerable governmental resources for the review, including having an agent assigned to sit with defendants' counsel while at the WFO. While this is an option to ensure that defendants have reviewed the same materials, it is certainly

not "the easiest and best" solution but is available should defendants be unable to obtain or

borrow a computer with sufficient capacity and storage to view the data contained on the Smile

Center's server.

WHEREFORE, the government respectfully opposes defendant Price's Motion for

Return of Property.

Respectfully submitted,

MATTHEW B. GRAVES
United States Attorney

BY:    /s/ *Diane G. Lucas*
DIANE G. LUCAS, D.C. Bar No. 443610
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7724
Diane.Lucas@usdoj.gov

11